IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JOHN EDWARD BURR,        )
                                  )
              Petitioner,     )
                                  )
     v.                    )         1:01CV393
                                  )
GERALD J. BRANKER,        )
Warden, Central Prison,   )
Raleigh, North Carolina,  )
                                  )
              Respondent.    )


**ORDER**


This matter is before this court for review of the Order and Recommendation of United States Magistrate Judge ("Original Report") (Doc. 28), filed on December 14, 2004, and the Order and Supplemental Recommendation of United States Magistrate Judge ("Supplemental Report") (Doc. 123), filed on May 6, 2009, by the Magistrate Judge in accordance with 28 U.S.C. § 636(b). In both the Original Report and the Supplemental Report, the Magistrate Judge recommends that a writ of habeas corpus be issued and Petitioner's[1] conviction and death sentence for first-degree murder be vacated without prejudice to the State of North Carolina's right to retry Petitioner within a reasonable time.

---

[1] "Petitioner" refers to Mr. John Edward Burr. At times throughout this order, however, this court quotes language from the orders issued in the State court proceedings, which refer to Petitioner as "Defendant."

(See Original Report (Doc. 28) at 44[2]; Supplemental Report (Doc. 123) at 51.)  Respondent[3] filed timely objections (Doc. 32) to this action on January 27, 2005, and filed timely objections (Doc. 125) to the Supplemental Report on May 22, 2009. Petitioner filed a timely response (Doc. 126) to Respondent's objections on June 9, 2009.

This court is required to "make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . . or recommit the matter to the magistrate judge with instructions."  Id.  After performing a de novo review of the portions of the Original Report and the Supplemental Report to which objections were made, this court adopts the Original Report in full and the Supplemental Report in part.  In compliance with the Supreme Court's holding in Cullen v. Pinholster, 563 U.S. ____, 131 S. Ct. 1388 (2011), this court bases its order only on the record that was before the State court during the Motion for Appropriate Relief ("MAR")

---

[2]  The Original Report does not specify that the order be entered without prejudice to the State's right to retry Petitioner. (See Original Report (Doc. 28) at 44.)  This Order adopts the Supplemental Report's inclusion of this right.

[3]  "Respondent" refers to Mr. Gerald J. Branker, Warden of North Carolina's Central Prison.

proceeding.  Therefore, while adopting the Original Report in full, this court only adopts the portion of the Supplemental Report that does not incorporate or rely upon facts not before the State court during the MAR proceeding.

In addition to adopting the Reports, this court writes briefly for the following three purposes: 1) to address two recent United States Supreme Court decisions, <u>Harrington v. Richter</u>, 562 U.S. ____, 131 S. Ct. 770 (2011), and <u>Cullen v. Pinholster</u>, 563 U.S. ____, 131 S. Ct. 1388 (2011); 2) to add further analysis supporting this court's holding that the State court's application of <u>Strickland</u> was unreasonable; and 3) to clarify that the Reports do not establish a per se rule requiring consultation with an expert as suggested by Respondent.  (<u>See, e.g.</u>, Resp't's Objections to Magistrate Judge's Supplemental Recommendation [hereinafter "Resp't's Objs. to Supplemental Report"] (Doc. 125) at 79-83.)  The findings and analysis of the Magistrate Judge are appropriately extensive, and, because the Original Report is adopted in its entirety, the facts and analysis contained in that Report will not be recited again here.

## I.   **LEGAL STANDARD PURSUANT TO <u>RICHTER</u> AND <u>PINHOLSTER</u>**

When a petitioner's claim has been "adjudicated on the merits in State court proceedings," a federal district court may grant the petitioner's writ of habeas corpus where the state court's adjudication of the claim "resulted in a decision that

-3-

was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1); see also Richter, 131 S. Ct. at 785; Williams v. Taylor, 529 U.S. 362, 412 (2000). Petitioner claims that the State court's decision to deny his MAR constituted an unreasonable application of clearly established federal law, namely the standards for evaluating ineffective assistance of counsel ("IAC") claims set forth in Strickland v. Washington, 466 U.S. 668 (1984) and its progeny.

To establish that he is entitled to relief under Strickland, Petitioner must show "both that his counsel provided deficient assistance and that there was prejudice as a result." Richter, 131 S. Ct. at 787. "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). A district court reviewing a Strickland claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Id. (quoting Strickland, 466 U.S. at 689). Petitioner must demonstrate that his counsel's errors were so egregious that he failed to function as the counsel to which Petitioner is entitled under the Sixth Amendment. Id. The prejudice prong of a Strickland claim is similarly exacting. Petitioner must establish "a reasonable

-4-

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  As the Supreme Court has stated, "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'  Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Richter, 131 S. Ct. at 787-88 (citation omitted) (quoting Strickland, 466 U.S. at 687, 693).

In Harrington v. Richter, the Supreme Court articulated a "double deference" standard that applies when, as in this case, a federal district court is reviewing a Strickland claim pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA).  131 S. Ct. at 788 (noting that "[t]he standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so" (citations omitted)).  Rather than "asking whether defense counsel's performance fell below Strickland's standard," which is the inquiry a court uses to evaluate a Strickland claim on direct review of a federal conviction, a district court reviewing a claim under § 2254(d) must instead focus on "whether the state court's application of the Strickland standard was unreasonable."  Id. at 785 (noting that "'an unreasonable application of federal

law is different from an _incorrect_ application of federal law'")
(_quoting_ _Williams_, 529 U.S. at 410).  The Supreme Court
explained, "Federal habeas courts must guard against the danger
of equating unreasonableness under _Strickland_ with
unreasonableness under § 2254(d)."  _Id._ at 788.  "A state court's
determination that a claim lacks merit precludes federal habeas
relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision."  _Id._ at 786.  More
specifically,

> Under § 2254(d), a habeas court must determine what
> arguments or theories supported or, as here, could have
> supported, the state court's decision; and then it must
> ask whether it is possible fairminded jurists could
> disagree that those arguments or theories are
> inconsistent with the holding in a prior decision of
> this Court.

_Id._  Furthermore, "even a strong case for relief does not mean
the state court's contrary conclusion was unreasonable."  _Id._

In _Cullen v. Pinholster_, the Supreme Court "clarified that
[the] AEDPA limits federal habeas review 'to the record that was
before the state court that adjudicated the claim on the
merits.'"  _Jackson v. Kelly_, 650 F.3d 477, 492 (4th Cir.)
(_quoting_ _Pinholster_, 131 S. Ct. at 1398), _cert. denied_, 132
S. Ct. 64 (2011).  "In other words, when a habeas petitioner's
claim has been adjudicated on the merits in state court, a
federal court is precluded from supplementing the record with
facts adduced for the first time at a federal evidentiary

hearing." Id. This is because "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." Pinholster, 131 S. Ct. at 1399.

Like the Fourth Circuit in Jackson, this court recognizes that the Magistrate Judge in this case "did not have the benefit of Cullen's guidance" when it granted the State's motion to expand the record and to conduct discovery. Jackson, 650 F.3d at 492. Consequently, the Magistrate Judge's "reliance on material developed [before the federal court] was at odds with [the] AEDPA's placement of primary responsibility [for habeas review] with the state courts," albeit unknowingly. Id. (internal quotation marks omitted) (citing Pinholster, 131 S. Ct. at 1399). Because this court now has the benefit of Pinholster, like the Fourth Circuit in Jackson, this court is "[m]indful that evidence introduced in a federal court has no bearing on § 2254(d)(1) review." Jackson, 650 F.3d at 492 (internal quotation marks omitted). Consequently, this court "proceed[s] to assess [Burr's] petition on the basis of the facts contained in the state-court record." Id.

This court must therefore determine if "fairminded jurists" could disagree over whether the arguments or theories upon which the State court's decision was based are inconsistent with the

-7-

holding of a prior decision of the Supreme Court.  <u>Richter</u>, 131
S. Ct. at 786.  If so, this court must deny the habeas petition.
<u>Id.</u>  Furthermore, although this court may consider the
Magistrate's Original Report in full, based on the holding in
<u>Pinholster</u>, it may only consider the Supplemental Report in part
and may not take into account information that was not in "the
record that was before the state court that adjudicated the claim
on the merits."  <u>Pinholster</u>, 131 S. Ct. at 1398.  More
specifically, this court may only consider, and has only
considered, the portions of the Supplemental Report that do not
incorporate new facts that were not before the State court.

    **II.  ADDITIONAL ANALYSIS**

    <u>Strickland</u>, <u>Wiggins</u>, and their progeny articulate a duty of
counsel to conduct a "reasonable investigation."  <u>See generally</u>
<u>Strickland v. Washington</u>, 466 U.S. 668, 690-91 (1984); <u>Wiggins v.
Smith</u>, 539 U.S. 510, 521-23 (2003).  The Supreme Court has noted
that such a reasonable investigation includes "obtaining the
[state's] own readily available file on the prior conviction to
learn what the [state] knew about the crime, to discover any
mitigating evidence the [state] would downplay, and to anticipate
the details of the aggravating evidence the [state] would
emphasize."  <u>Rompilla v. Beard</u>, 545 U.S. 374, 385-86 (2005).
Further, "<u>Strickland</u> does not establish that a cursory
investigation automatically justifies a tactical decision with

-8-

respect to [a particular strategy].  Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy."  <u>Wiggins</u>, 539 U.S. at 527; <u>see also</u> <u>Scanlon v. Harkleroad</u>, 740 F. Supp. 2d 706, 718 (M.D.N.C. 2010), <u>aff'd</u>, No. 10-7510, 2012 WL 580421 (4th Cir. Feb. 23, 2012) (noting that trial counsel's decision not to utilize certain medical records could not have been "strategic because it was based on inadequate investigation").

In this case, Petitioner's trial counsel did not conduct a reasonable investigation of the medical opinions regarding the cause of Tarissa Sue O'Daniel's ("Susie's") injuries, particularly the brain injury that led to her death.  Counsel thus did not make a reasoned decision after a reasonable investigation that further investigation was not required.  On the contrary, counsel sought a continuance to conduct further investigation.  (<u>See</u> Original Report (Doc. 28) at 14.)  Trial counsel therefore did not make a "strategic" choice not to conduct further investigation into the State's medical opinions. <u>See</u> <u>Scanlon</u>, 740 F. Supp. 2d at 716-17 (finding petitioner to have met the "performance" prong of the <u>Strickland</u> analysis due in part to trial counsel's admission that "he had no strategic reason for failing to use the [alleged victim's medical] Records to rebut the State's" theory of the case).

In <u>Byram v. Ozmint</u>, 339 F.3d 203, 209-11 (4th Cir. 2003), the Fourth Circuit distinguished <u>Wiggins</u> and affirmed a district court's denial of relief premised on ineffective assistance of counsel where counsel had conducted a thorough investigation and had made a strategic decision not to present psychological evidence. Unlike in <u>Byram</u>, trial counsel in this case did not make a strategic decision based upon a thorough investigation not to further pursue possible defenses. In that sense, this case is similar to <u>Scanlon</u>, 740 F. Supp. 2d 706, in which a court of this district found that trial counsel had not conducted a reasonable investigation that could support his decision not to utilize the alleged victim's medical records at trial. In reaching this holding, the court noted:

> The present case is distinguishable from <u>Byram v.</u>
> <u>Ozmint</u>, 339 F.3d 203 (4th Cir. 2003). In <u>Byram</u>, the
> Fourth Circuit observed that the reasonableness of an
> investigation or decision by counsel that further
> investigation is not necessary must be considered in
> light of the scarcity of counsel's time and resources.
> 339 F.3d at 210. The court found that counsel's
> decision not to seek the defendant's adoption records
> was reasonable because counsel had thoroughly
> investigated the defense that would have utilized them
> and concluded there was not enough of a factual basis
> to present that defense. <u>Id.</u> Here, Trial Counsel
> conducted no such thorough investigation into the
> suicide line of defense. Even in light of the rigors of
> preparing for a capital trial and the accompanying time
> constraints, it would have been difficult for Trial
> Counsel to conclude that seeking Harris' psychiatric
> records would not benefit the defense . . .

<u>Id.</u> at 719 n.8. Likewise, in this case, trial counsel "conducted no such thorough investigation" into the medical opinions

regarding the cause of Susie's injuries.  See also Wiggins, 539
U.S. at 533-34.

In Richter, the Supreme Court elaborated on counsel's duty
to develop expert evidence in preparation for trial.  See
Richter, 131 S. Ct. at 788-90.  Although the Court ultimately
found that the state court's holding denying the petitioner's IAC
claim was not an unreasonable application of Strickland, the
Court noted that "[c]riminal cases will arise where the only
reasonable and available defense strategy requires consultation
with experts or introduction of expert evidence, whether
pretrial, at trial, or both."  Id. at 788.  The Court did
maintain, however, that "even that formulation is sufficiently
general that state courts would have wide latitude in applying
it."  Id. at 789.  Ultimately, "[a]n attorney need not pursue an
investigation that would be fruitless, much less one that might
be harmful to the defense."  Id. at 789-90.

Further, as more fully discussed by the Magistrate Judge,
disagreement with the state court's denial of a petitioner's IAC
claim is, standing alone, insufficient to support the issuance of
a writ of habeas corpus.  (See Supplemental Report (Doc. 123) at
45-48; Original Report (Doc. 28) at 15, 38-44.)  Because the
State court, in its order denying relief, applied applicable
precedent such as Wiggins and Strickland, a writ may be issued
only upon a finding that the state court "unreasonably applie[d]"

-11-

existing precedent to the facts of the petitioner's case. Williams v. Taylor, 529 U.S. 362, 413 (2000) (O'Connor, J., delivering the opinion in part, concurring in part).  As explained above, substantial deference is owed to the state court's determination.  See Richter, 131 S. Ct. at 788; Pinholster, 131 S. Ct. at 1398-99.

The State court orders denying Petitioner's IAC claim addressed two motions: 1) Petitioner's motion for a new trial, and 2) Petitioner's MAR.  (See generally MAR Order I, Oct. 3, 1997; MAR Order II, June 15, 2000.)  Both the motion for a new trial and the MAR were based, at least in part, on Petitioner's new evidence related to osteogenesis imperfecta ("OI") and, more significantly, the possible fatal consequences arising from the uncontested fact of Susie's fall shortly before her death.[4]  The State court noted in its October 3, 1997 Order that there was

---

[4]  Discovery was permitted in this court during the habeas proceedings, and the parties were permitted to supplement the record.  (See Order of Mag. Judge, Feb. 1, 2006 (Doc. 68) at 3-5.)  In keeping with the requirements of Pinholster, this court has considered the State court's order based upon the record as it existed before that court.  See Pinholster, 131 S. Ct. at 1398.  Because the OI evidence has significantly changed in character following the habeas discovery, this court's analysis is primarily directed to the State court's order as it related to "short fall" or "accidental fall" medical testimony. More specifically, since the Magistrate Judge issued his Original Report, the evidence that Susie suffered from OI has weakened, while the facts indicating that Susie's death might have been caused by an accidental fall have strengthened.  Despite these changes in the record, this court finds that Petitioner's request for habeas relief is not moot because sufficient facts still exist that support an order of habeas relief.

overlap between the evidence offered in support of the motion for a new trial and the IAC claims raised in the MAR. (See MAR Order I at 13 ("[This claim] is discussed first because of its significance and relationship to other claims discussed below.").)

The State court denied Petitioner's motion for a new trial after considering the same medical testimony upon which Petitioner based his IAC claim in the MAR. (Id. at 23-32, 50-61.) The State court held, inter alia, that the motion for a new trial should be denied because

> [D]efendant has not demonstrated by his proffered evidence (i.e., his evidence concerning OI and accidental falls) (a) that the evidence is probably true;[5] (b) that defendant could not have with due diligence either discovered or made available the evidence at the time of trial . . . .

---

[5] The State court's holding that Petitioner failed to show the evidence is "probably true" does not apply to an IAC claim. Strickland, 466 U.S. at 694. This is so because the due diligence requirement of the newly discovered evidence standard presupposes effective counsel. The Supreme Court in Strickland noted that

> [T]he newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged.

Id. The reliability of Petitioner's evidence is addressed by the Magistrate Judge under the applicable standards set forth by Strickland in the context of the ineffective assistance of counsel claim. (See Supplemental Report (Doc. 123) at 14; see also Original Report (Doc. 28) at 41-44.)

-13-

(Id. at 61 (emphasis added).) It is undisputed that trial counsel did not actually discover the evidence or information concerning OI or short falls before or during the trial. The State court held that Petitioner failed to show that the OI and short fall evidence provided by Petitioner in the post-trial proceedings could not have been discovered at the time of trial upon the exercise of due diligence. (Id.) This conclusion, relevant to the newly discovered evidence standard, is not dispositive of the pertinent inquiry under Strickland. However, the conclusion that short fall and OI evidence could have been discovered through the exercise of due diligence is instructive and ultimately weighs in favor of Petitioner's IAC claim. The State court's conclusion that the evidence could have been discovered upon the exercise of due diligence necessarily means that Petitioner's counsel did not exercise such diligence in failing to discover that evidence. As a result, the State court's decision denying relief on the IAC claim appears to unreasonably overlook its own conclusion that the short fall and OI evidence could have been discovered in the exercise of due diligence.

This conclusion is further supported by the findings of the State court in denying the MAR on the continuance issue. The State court held that "it would be mere speculation to conclude that granting the request for a continuance would have diverted

-14-

trial counsel to the strategy defendant now pursues (i.e., that
Susie had OI)." (Id. at 75.)  This conclusion is in tension with
the State court's finding that the evidence could have been
discovered through the exercise of due diligence.  If, in fact,
the evidence could have been discovered through the exercise of
due diligence as held by the State court, then the finding of the
State court can only be supported by the assumption that because
counsel failed to exercise due diligence in the brief period they
were given to prepare for trial, they would have continued to
fail to exercise due diligence and discover the evidence if a
continuance had been granted.  To the contrary, the court must
apply an analysis based upon what the objective, diligent counsel
would have discovered in the interim, not the Petitioner's
actual, deficient counsel.  See Strickland, 466 U.S. at 694.

     This holding by the State court is also somewhat contrary to
its findings and rulings on Petitioner's IAC claim.
Paradoxically, in regard to that issue, the State court held that
"trial counsel worked diligently for a reasonable amount of
time." (MAR Order I at 74-75.)  The State court further held:

        Defendant's current counsel have found experts who take
        issue with the State's witnesses at trial.  The mere
        fact that they have found such experts does not
        demonstrate ineffectiveness of counsel.  First, matters
        of record demonstrate that trial counsel spent a
        reasonable amount of time investigating circumstances
        relating to the case.  Second, court decisions
        concerning Strickland demonstrate that the first prong
        of Strickland requires the Court to evaluate trial

> counsel's actions in light of the circumstances facing
> trial counsel at and before trial.

(Id. at 76 (emphasis added).)  While there is no dispute that
trial counsel worked diligently and spent a reasonable amount of
time investigating some issues, trial counsel did not spend a
reasonable amount of time investigating the medical opinions
about the cause of Susie's death, and thus did not discover the
OI or short fall evidence that would have provided a legitimate
defense.  That evidence, according to the State court's holding,
could have been discovered through the exercise of due diligence.
(See MAR Order I at 61.)  The State court unreasonably focused on
trial counsel's total time of preparation and allowed its
estimation of that time to overshadow the mere ten hours trial
counsel spent investigating the medical evidence.  See Wiggins,
539 U.S. at 527 ("In assessing the reasonableness of an
attorney's investigation . . . a court must consider not only the
quantum of evidence already known to counsel, but also whether
the known evidence would lead a reasonable attorney to
investigate further.").

Pinholster and Richter hold that "[a] habeas court must
determine what arguments or theories . . . could have supporte[d]
the state court's decision; and then it must ask whether it is
possible fairminded jurists could disagree that those arguments
or theories are inconsistent with the holding in a prior decision
of this Court."  Pinholster, 131 S. Ct. at 1402 (omission and

-16-

second alteration in original) (quoting Richter, 131 S. Ct. at 786). Pursuant to that standard, Respondent relies significantly upon the fact that counsel interviewed Dr. Desmond Runyan, a consulting physician to Susie's attending physicians, to support the State court's decision that Petitioner's trial counsel conducted a reasonable investigation. This court, however, agrees with the Magistrate Judge that this investigation was insufficient. (See, e.g., Supplemental Report (Doc. 123) at 12-13.) Dr. Runyan was not interviewed by trial counsel until after jury selection had commenced. (Resp't's Objs. to Magistrate Judge's Original Report (Doc. 32) App. 1 at 44-45; App. 2 at 52-53; Dep. of Dr. Desmond Runyan ("Runyan Dep.") (Doc. 100) at 38-39.) Therefore, in lieu of an independent investigation, it appears that Petitioner's trial counsel conducted an interview with Dr. Runyan simply to confirm the evidence contained in the medical reports and discovery materials, rather than to investigate the subjective components of the medical opinion testimony as to what did or did not cause Susie's death. While an interview of Dr. Runyan certainly would have been an appropriate step in investigating the medical records, it was insufficient, standing alone, to constitute an independent investigation of the medical evidence.

Furthermore, Dr. Runyan was a consulting physician to the team of attending physicians treating Susie. (Runyan Dep. (Doc.

100) at 17; App. l, Aff. of Dr. Desmond K. Runyan (Doc. 125-1) at 2.) As such, notwithstanding Dr. Runyan's experience, his interview with trial counsel placed him in the position of defending his previously formulated opinion as to the cause of Susie's injuries, rather than in the independent position of articulating or disclosing any medical evidence that might lead to the discovery of exculpatory "evidence the [state] would downplay." Rompilla v. Beard, 545 U.S. 374, 385 (2005) (noting that reasonable investigative efforts require some effort to determine the existence of any mitigating or exculpatory evidence). See also Williams, 529 U.S. at 392-97 (holding defendant was denied effective assistance of counsel when his attorneys failed to investigate mitigating evidence related to the sentencing phase); Gray v. Branker, 529 F.3d 220 (4th Cir. 2008) (recognizing trial counsel's "independent duty to investigate" petitioner's mental health and holding that the MAR court unreasonably applied Strickland where it relied on petitioner's one-time refusal to hire an independent psychiatrist to find that petitioner had failed to satisfy Strickland's deficient performance component).

As noted above, the time spent by trial counsel preparing for the trial as a whole does not compensate for trial counsels' failure to spend more than ten hours reviewing and investigating the medical evidence in the case, and this court finds that the

State court's finding to the contrary is unreasonable. In Elmore
v. Ozmint, 661 F.3d 783, 856 (4th Cir. 2011), the Fourth Circuit
found that a petitioner had succeeded in alleging an IAC claim
and that "although the state [post-conviction relief] court
correctly identified certain Strickland principles, the court
unreasonably applied those tenets to the facts before it."  Id.
In Elmore, the petitioner's trial counsel had failed to make a
reasonable investigation into the state's forensic evidence and
actually vouched for the veracity of the state's witnesses.  The
Fourth Circuit noted that trial counsel had

> [C]onceded that he was ill-equipped to challenge the
> police investigators. . . . [Counsel] effectively
> abandoned his client and actually vouched for those
> investigators, advising the jury: "I think at SLED they
> are recognized as being one of the best departments or
> probably as good as the F.B.I. They have a very fine
> department, and they have very good personnel, and they
> are experts at everything they do." Id. at 913. Not
> surprisingly, it merely took the jury about two hours
> to agree on the guilty verdict. After all, as the state
> [post-conviction relief] court recognized, conviction
> was the jury's only rational option in view of the
> State's evidence and Elmore's ineffectual defense.

Id. at 855.  Similarly, in this case, trial counsel accepted the
State's theory that an accidental fall could not have caused
Susie's death:

> Trial Counsel: Do you know how Tarissa Sue  O'Daniel
>                was injured?
>
> Petitioner:    The only thing I know was the fall.
>
> Trial Counsel: Okay.

> Trial Counsel: And you understand now from the medical
> evidence that has been presented here in
> Court that it's highly unlikely that
> that's the cause of the injuries that
> she received?
>
> Petitioner:     Yes, sir, I sho' do.

(Trial Tr. vol. 22, at 1221.)  Perhaps more damaging, trial
counsel stated in his opening statement to the jury:

> I submit to you that the evidence that will be
> presented, there will [sic] <u>no dispute about that fact
> that Susie O'Daniel was badly abused, there will be no
> dispute about the fact that Susie O'Daniel died as a
> result of the injuries she received</u> late on the night
> of August 24th or early on the morning of August 25th
> of 1991.

(Trial Tr. vol. 17, at 35 (emphasis added).)  Given that, based
upon uncontroverted testimony, Petitioner was alone with Susie in
the period leading up to the discovery of her injuries, once
Petitioner's trial counsel submitted to the jury that Susie was
"badly abused" and that there was "no dispute about the fact that
Susie O'Daniel died as a result" of such abuse, conviction was
the jury's "only rational option."  <u>Elmore</u>, 661 F.3d at 855.  The
fact that trial counsel interviewed Dr. Runyan, a consulting
physician and child advocate, during jury selection does not
compel a different result or by itself suffice to meet the
requirement that trial counsel conduct a reasonable investigation
into potentially exculpatory evidence.

-20-

### III. PER SE RULE ANALYSIS

In its objections, the State has argued that the analysis contained in the Reports would create a rule that counsel must always seek an independent medical expert. This court disagrees. In many cases, the medical testimony may be consistent with other evidence such that reliance on the State's experts is consistent with the standards established by <u>Strickland</u> and <u>Wiggins</u>. Here, however, it was not clear that the evidence relied upon by the attending and treating physicians was fully consistent and accurate. Most importantly, there was conflicting testimony on the issue of whether Susie did or did not have a skull fracture and whether Susie was dropped or gently cushioned during the short fall that occurred in the arms of her then eight-year-old brother. Recognizing, as the State court held, that OI and short fall evidence could have been discovered through the exercise of due diligence (<u>see</u> MAR I Order at 61), a reasonable investigation or a reasoned decision not to conduct further investigation required some independent investigation and review by trial counsel of the State's medical opinion testimony. "[N]o amount of deference could compel any fair conclusion" to the contrary. <u>Elmore</u>, 661 F.3d at 866.

**IT IS THEREFORE ORDERED** that the Magistrate Judge's Original Report (Doc. 28) is **ADOPTED** and that the Magistrate Judge's Supplemental Report (Doc. 123) is **ADOPTED IN PART** as more fully

-21-

described herein.  For the reasons set forth in the Magistrate
Judge's Reports, **IT IS FURTHER ORDERED** that a writ of habeas
corpus be issued and that Petitioner's conviction and death
sentence for first-degree murder be vacated without prejudice to
the State of North Carolina's right to retry Petitioner within a
reasonable period of time.  A judgment consistent with this
opinion will be entered contemporaneously with this Order.

 This the 30th day of May 2012.


     _____
       United States District Judge